UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **SERONO, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Civil Action No. 02-11832 MLW** |
| | ) | |
| **FERRING PHARMACEUTICALS, INC.,** | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| **FERRING PHARMACEUTICALS, INC.,** | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **SERONO, INC., and SERONO S.A.** | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**FERRING PHARMACEUTICALS, INC.'S BRIEF IN OPPOSITION TO SERONO, INC.'S
MOTION TO DISQUALIFY FERRING'S EXPERT WITNESS DR. PATRICK SLUSS**

## I.   INTRODUCTION

Before being engaged by Ferring,  Ferring's expert Dr. Patrick Sluss met with Serono

attorneys one time only to discuss a United States Patent-- a public document -- not in this case.

On this basis, Serono moves the Court to disqualify Ferring's expert Dr. Patrick Sluss without

making any showing that Dr. Sluss was made privy to any confidential information of Serono

relevant to this case or that Serono reasonably expected it spoke with Dr. Sluss in confidence.

Indeed, Serono has no confidentiality agreement with Dr. Sluss.  Serono has no engagement

agreement with Dr. Sluss.  Serono has nothing to support its contention that Dr. Sluss agreed

never to work for Ferring. It simply had one meeting with him. Ferring submits this brief in opposition to Serono's motion to disqualify Dr. Sluss.

## II.    BACKGROUND

Even after Serono knew Dr. Sluss had been approached by Ferring to serve as its expert, Serono never sought a written confidentiality agreement with Dr. Sluss. Serono never sought to get Dr. Sluss to acknowledge in writing receipt of Serono's confidential information or evidence. Serono never sought to get in writing any agreement of Dr. Sluss to be "preliminarily engaged" or to acknowledge that he had been so engaged. Serono never sought to get Dr. Sluss to sign an agreement never to work for Ferring. Serono, of course, has no such agreements. And with good reason. There were no such agreements.

Dr. Patrick Sluss, an Assistant Professor at Harvard Medical School, is Associate Director of Clinical Chemistry in Pathology and Director of the Reproductive Endocrine Unit Reference Laboratory in the Department of Medicine at the Massachusetts General Hospital. (*See* Declaration of Patrick Sluss ("Dr. Sluss Decl.") ¶ 1.)

On October 30, 2003, six weeks after Dr. Sluss had a single meeting with two Serono attorneys who never called back, Dr. Sluss first spoke by phone with counsel for Ferring. (Dr. Sluss Decl. ¶¶ 11, 16, 17.) This conversation came while Ferring's counsel was consulting with another expert at Harvard/Massachusetts General Hospital, Dr. William Crowley, for whom Dr. Sluss does laboratory work.. (Dr. Sluss Decl. ¶17.) In a telephone call on that date, with Dr. Crowley on the line, Ferring's counsel indicated that Ferring might want to engage Dr. Sluss as an expert. (Dr. Sluss Decl. ¶ 17.) Dr. Sluss responded that he had been interviewed as a candidate expert more than a month earlier by Serono and that Serono had not communicated with him further. (Dr. Sluss Decl. ¶ 17.) Ferring's counsel made it plain then and there they did

not want Dr. Sluss to reveal to counsel or Dr. Crowley anything he had discussed with counsel for Serono. (Dr. Sluss Decl. ¶¶ 17, 20.)

Dr. Sluss has honored that proscription. (Dr. Sluss Decl. ¶ 20.) He has never discussed with Ferring's counsel the substance of his single meeting with Serono's lawyers.

In mid-November – two months after Serono's solitary meeting with Dr. Sluss -- Dr. Sluss called Serono's attorney Boehnen. (Dr. Sluss Decl. ¶ 18.) At that time, Sluss informed Serono attorney Boehnen that he had decided not to serve as an expert for Serono, and that his superior (Dr. Crowley ) was working for Ferring. At the same time, Dr. Sluss also made it plain to Mr. Boehnen that he had been approached by Ferring to work as an expert for Ferring. Contrary to the declaration of attorney Boehnen, Dr. Sluss did not promise not to work with Ferring. (Dr. Sluss Decl. ¶¶ 18-19.)

Dr. Sluss had no reason to promise attorney Boehnen that we would not work as an expert for Ferring: nothing had happened that would make such work improper. Dr. Sluss had never spoken in confidence with Serono, he had never learned any confidential information, he had never been "preliminarily" engaged by Serono, and he had never agreed to anything more than meet one time with Serono's lawyers. (Dr. Sluss Decl. ¶¶ 5 -15.) Indeed, Dr. Sluss's single meeting with Serono dealt with a public document – a U.S. patent – that is not one of the two patents in this case, and Dr. Sluss discussed no issues that pertain to this case. (Dr. Sluss Decl. ¶ 11.)

Nothing had happened that justified putting anything on paper, either. Dr. Sluss never signed any agreements to speak with Serono in confidence. Neither did he sign any expert engagement agreements. Neither did he agree – orally or in writing – not to be an expert for Ferring. There was no need for Dr. Sluss to sign such agreements. There were no such

agreements. The facts of Dr. Sluss's minimal and informal interaction with Serono make the absence of such agreements reasonable.

Dr. Sluss first heard from Serono attorney Daniel Boehnen by telephone on September 5, 2003. (Dr. Sluss Decl. ¶ 4.) The purpose of that contact was simply to set up a meeting to determine if Serono was interested in engaging Dr. Sluss as an expert. (Dr. Sluss Decl. ¶ 4.) There was no other purpose. (Dr. Sluss Decl. ¶¶ 5, 6.) Dr. Sluss was not meeting with Serono to learn Serono's "position" on anything, to determine if he agreed with Serono on anything, or to determine his "role" in a lawsuit. (Dr. Sluss Decl. ¶ 5.) At the time of this first contact through the meeting itself, Serono never extended any offers to Dr. Sluss to do anything except sit down and talk. (Dr. Sluss Decl. ¶ 7.) Because of that, Dr. Sluss did not then express any interest in accepting a consulting offer from Serono. (Dr. Sluss Decl. ¶¶ 7, 8.)

At the time of this first contact, and in advance of the September 16 meeting, Dr. Sluss was not "preliminarily engaged" to serve as an expert. (Dr. Sluss Decl. ¶ 8.) Importantly, at the time of this first contact, and in advance of the meeting, counsel for Serono did not ask to speak with Dr. Sluss in confidence, nor did they did say they would reveal confidential information to him. (Dr. Sluss Decl. ¶¶ 10.)

To sit and have a single meeting with Serono's lawyers was the one and only thing Dr. Sluss ever agreed to do for Serono. (Dr. Sluss Decl. ¶ 9.) As arranged, attorney Boehnen and Serono's in-house attorney Jill Uhl met with Dr. Sluss on September 16, 2003. Again, at the meeting, counsel for Serono did not ask to speak with Dr. Sluss in confidence, they did not say they were going to reveal confidential information to him, and they did not say or indicate that they had done so. (Dr. Sluss Decl. ¶ 10.) There were no preliminary agreements or

preconditions placed on Dr. Sluss's discussion that day with Serono's lawyers. (Dr. Sluss Decl. ¶¶ 8-10.)

Instead, and consistent with that casual prelude, during his meeting with Serono's lawyers on September 16, Dr. Sluss was simply shown a copy of an issued U.S. Patent. (Dr. Sluss Decl. ¶ 11.) This is a publicly available document. Significantly, this U.S. Patent was not one of the two patents in suit about which Dr. Sluss will serve as an expert for Ferring. (Dr. Sluss Decl. ¶¶ 1, 11.) Counsel for Serono asked Dr. Sluss questions about the patent and Dr. Sluss answered those questions.[1] (Dr. Sluss Decl. ¶ 11.) Not surprisingly, in discussing a patent outside the present case, Dr. Sluss did not discuss with Serono's attorneys any issues which he understands to be raised in this case. (Dr. Sluss Decl. ¶ 11, 12.) In particular, Dr. Sluss did not discuss with Serono anything related to the detectability of LH – a likely issue in this case. (Dr. Sluss Decl. ¶ 11; *see also* Serono's Amended Claim Chart and Proposed Interpretations, December 17, 2003 construing claim terms related to "FSH alone.")

Consistent with Serono's casual approach to this meeting, Dr. Sluss did not discuss with Serono's lawyers Serono's positions in the instant case, Ferring's expected positions, any evidence that Serono had gathered, much less whether he agreed with anything Serono believed. (Dr. Sluss Decl. ¶ 12, 13.)  Most certainly Dr. Sluss did not say that his views were "closely aligned with those of Serono" since Serono's views were not discussed. (Dr. Sluss Decl. ¶ 14.)

---

[1]  Serono has chosen not to disclose the content of the conversations they had with Dr. Sluss. Because Dr. Sluss has honored Ferring's request that he not reveal the content of his communications with Serono's counsel, Ferring is unable to do so. As discussed below, however, Serono has the burden of proving both that confidential information was revealed to Dr. Sluss and that this information is relevant to the instant case. **[CITE]**

Also consistent with Serono's unconcern with confidentiality, at the September 16 meeting, Serono did not show or describe any confidential information to Dr. Sluss. (Dr. Sluss Decl. ¶ 10.) Consistent with there being no agreements with Serono, including "preliminary" agreements, Dr. Sluss did not charge Serono for his time. (Dr. Sluss Decl. ¶ 15.) And consistent with both was Serono's follow up to the meeting with Dr. Sluss: nothing. Serono's attorneys did not make any effort to contact Dr. Sluss for the next two months. (Dr. Sluss Decl. ¶¶ 16, 18.)

When, two months later, Dr. Sluss next spoke with Serono's attorneys, Dr. Sluss called them. In mid-November, 2003, Dr. Sluss told Serono's attorney Mr. Boehnen that he would not serve as an expert for Serono. He added that Dr. Crowley, his supervisor, was working for Ferring. And he expressly informed attorney Boehnen that he (Dr. Sluss) had been approached by Ferring to be an expert for Ferring. (Dr. Sluss Decl. ¶ 18.) Far from promising not to be an expert for Ferring, Dr. Sluss put Serono on notice that he might be engaged as an expert for Ferring. (Dr. Sluss Decl. ¶¶ 18, 19.)

It is uncontested that Serono and its lawyers sat silent for the next three and one-half months until Ferring served its Expert Witness Disclosure naming Dr. Sluss as a testifying expert. Serono did not get Dr. Sluss to acknowledge he had been "preliminarily retained" nor did Serono offer to pay for that retention. Serono did not ask Dr. Sluss to acknowledge receipt of Serono's confidential information covering his single meeting with them and keep it confidential. Serono did not ask Dr. Sluss to sign an agreement not to work for Ferring.

Serono sat silent with good reason. Serono had not shown anything confidential to Dr. Sluss and it had no objectively reasonable expectation that it had a confidential relationship with Dr. Sluss.

001.1631548Updated
opp. to disqualification

### III.   LEGAL STANDARD

Noting that "there are many communications between a client and an expert witness which are not privileged," and noting that experts, unlike lawyers, are "not advocates in the litigation but sources of information and opinions," one court held that experts can only be disqualified if a movant meets its burden of proof on a two-part test.  *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F.Supp. 1498, 1501-2 (D. Col. 1993).  This Court agrees.

In this Court, to strike Dr. Sluss, Serono has the burden of proof in affirmatively answering two questions : "First, was it objectively reasonable for the first party who claims to have retained the expert to believe that a confidential relationship existed?  Second, did that party disclose any confidential information to the expert?  *City of Springfield v. Rexnord Corp.*, 111 F.Supp.2d 71, 74-75 (D. Mass 2000) (citing *English Feedlot* and denying motion to disqualify). The burden of proof in proving an affirmative answer to these questions lies on Serono.  *In re Malden Mills Indus., Inc.*, 275 F.R.D. 670, 673 (Bankr. D. Mass. 2002) (denying motion).

### IV.   THE COURT SHOULD NOT DISQUALIFY DR. SLUSS

This is not a case of "side-switching" as Serono argues.  (Serono Br., p. 5.)  According to this Court, in a case relied upon by Serono, "side-switching," in this context, is "where an expert is <u>retained</u> by one party to litigation and switches sides to consult for the opposing party. . .." *City of Springfield v. Rexnord Corp.*, 111 F.Supp.2d 71, 74 (D. Mass 2000) (denying motion to disqualify) (emphasis added).  Instead, this is a case where Serono, bearing the burden of proof, has made no showing , first, that it disclosed confidential information to Dr. Sluss that relates to this case, or, second, that it ever had an objectively reasonable basis to believe it had a confidential relationship with Dr. Sluss.  Put another way, Serono hasn't shown that Dr. Sluss ever took a side, much less that it would be harmed if he switched.

001.1631548Updated
opp. to disqualification

### A.    SERONO PRESENTED NO EVIDENCE SHOWING DISCLOSURE OF CONFIDENTIAL INFORMATION TO DR. SLUSS.

Neither of the two declarations submitted by Serono in support of its motion declare under penalty of perjury that Dr. Sluss was shown anything confidential to Serono. Neither of the two declarations submitted by Serono specify what actual information was disclosed to Dr. Sluss. Instead, Serono implies confidentiality by saying its counsel discussed with Dr. Sluss Serono's and Ferring's "positions" and Serono's "evidence." But the "positions" and "evidence" are never further described. Such statements do not make a showing of a disclosure of confidential information – instead, they are hints, suggestions.

#### 1.    Serono Discussed With Dr. Sluss A Patent Not In This Case.

The only evidence as to what Dr. Sluss actually saw comes from Dr. Sluss himself. When he met with Serono's lawyers, Dr. Sluss examined and discussed <u>a single U.S. Patent  – a public document – that is not one of the patents in this case.</u> (Dr. Sluss Decl. ¶ 11.)  Not surprisingly, Dr. Sluss has not relied on this patent or any issues discussed with Serono's lawyers in his work for Ferring.  (Dr. Sluss Decl. ¶ 21)  Dr. Sluss is unable to find anything in this patent, or his meeting with Serono's lawyers that creates a conflict of interest for him.  (Dr. Sluss Decl. ¶ 21.)

In this Court, even under circumstances where one might expect confidences to be exchanged, where a party does not show it previously disclosed confidential information to an expert, it has no grounds to disqualify that expert.  In *City of Springfield*, this Court, in denying a disqualification motion, cited with approval the case of *English Feedlot*, 833 F.Supp. 1498 (D. Col. 1993). *City of Springfield*, 111 F.Supp.2d at 75.  In *English Feedlot*, the movant seeking disqualification had previously engaged veterinary expert Brown under terms of strict confidentiality to investigate and settle complaints about movant's livestock vaccine under terms

8

of strict confidentiality. But the movant only showed the expert the consumer complaints and an "instruction packet" for settling claims which was disseminated to the public. "Here, despite a relationship conducive to confidential disclosures, I find that [movant] did not impart significant confidential disclosures to Brown." *Id.*, at 1502-1503.

Like the movant in *English Feedlot*, Serono has simply no evidence that Dr. Sluss learned Serono's confidential information. Neither of Serono's declarants was willing to so state.

      **2.**    **Serono Has Made No Showing That Whatever It Discussed With Dr. Sluss Was Somehow Relevant To This Case.**

Beyond general characterizations, Serono's declarations give no evidence that links whatever it was that was discussed with Dr. Sluss to the present case. To say that they discussed "the various issues we expected to arise in the above captioned action," as the Boehnen declaration does in its sixth paragraph, does not permit an independent assessment of the link between the "issues" and "the above captioned action."

The evidence is actually to the contrary. Dr. Sluss only discussed with Serono a patent not in the present case. (Dr. Sluss Decl. ¶ 11.) Dr. Sluss has declared that nothing he discussed with Serono is relevant to the instant cased. (Dr. Sluss Decl. ¶ 11.)

In *City of Springfield*, this Court denied a disqualification motion in an environmental contamination case where a challenged expert did structural engineering work for the plaintiff prior to doing environmental consulting work for the defendant in the case. Like here, the moving plaintiff prevented no evidence that the expert learned something relevant to the environmental lawsuit. There was no connection with the case before the Court and the motion was denied. *Id.*, at 75.

Where no confidential information is exchanged, there is nothing improper in one party engaging an expert previously consulted by its opponent. In denying the motion to disqualify in *City of Springfield*, (111 F.Supp.2d at 75) this Court also cited with approval *Palmer v. Ozbek*, 144 F.R.D. 66 (D. Md. 1992). In denying a motion to disqualify an expert that met for two hours with opposing experts, but who had neither been engaged by counsel nor made privy to relevant confidential information, the *Palmer* court noted that "[n]othing in the language of Fed. R. Civ. P 26(b)(4)(B) precludes a party from retaining an expert previously consulted by his opponent." *Id.* at 67.

The Federal Circuit concurs. In a child vaccine liability case, an expert switched sides between cases. A special master permitted defendant's medical expert Dr. Gomez to testify despite the fact that plaintiffs' counsel had previously put Dr. Gomez on the stand on behalf of a different plaintiff. The Federal Circuit held that "[t]his does not mandate disqualification unless it is reasonable to conclude that Dr. Gomez possessed confidential information that would prejudice the [plaintiffs]." Noting that plaintiffs "present no evidence that warrants such a finding," the Federal Circuit found the magistrate did not abuse her discretion in hearing the expert's testimony. *Hanlon v. Sec'y Health and Human Serv.*, 191 F.3d 1344, 1349-50 (Fed. Cir. 1999), *cert. denied*, 530 U.S. 1210 (2000).

By not showing the information it gave Dr. Sluss was confidential, much less relevant to the instant case, Serono fails the first prong of the test. Furthermore, Serono's failure makes Ferring's approach to and engagement of Dr. Sluss completely proper.

### B.   Serono Has No Basis For An Objectively Reasonable Belief That It Ever Had A Confidential Relationship With Dr. Sluss.

This Court, sitting in Bankruptcy jurisdiction and deciding expert disqualification motions, has noted that "[i]n determining whether it is objectively reasonable to believe that a

10

confidential relationship existed, the burden is on the party who claims to have first retained the expert to make sure that the expert understands (a) the type of relationship that the engaging party expects will exist and (b) the need for confidentiality." *In re Malden Mills Indus. v. E.I. duPont de Nemours & Co.*, 275 B.R. 670, 673 (Bankr. D. Mass. 2002).

While Serono argues that Dr. Sluss was "preliminarily retained" and that "Dr. Sluss, for his part, agreed to serve as an expert consultant/witness for Serono," (Br., pp. 1,6), neither of Serono's declarants make those statements. The Boehnen declaration never says Dr. Sluss agreed to be an expert, preliminarily or otherwise. The Uhl declaration only says attorney Uhl "believed" Serono retained Dr. Sluss. (Uhl Decl., ¶ 6.) No one says Dr. Sluss agreed to work with or for Serono. Much less did Serono present evidence that it had met its separate *Malden Mills* burden to educate Dr. Sluss about "the type of relationship that the engaging party expects will exist" or "the need for confidentiality."

In fact, the only agreement Serono and Dr. Sluss had was to meet one time. (Dr. Sluss Decl. ¶ 9.) All three declarants – Sluss, Boehnen, and Uhl – support this single agreement. (Dr. Sluss Decl. ¶¶ 4, 9; Boehnen Decl ., ¶ 4; Uhl Decl., ¶ 3) It is uncontested that Dr. Sluss never signed a expert retention agreement. "[W]e never had any formal engagement letter with Dr. Sluss," attorney Boehnen concedes. (Boehnen Decl., ¶ 8.) Neither did Serono ever ask to speak in confidence with Dr. Sluss. (Dr. Sluss Decl. ¶ 10.) In fact, Serono never warned Dr. Sluss it would disclose confidential information, Serono never identified anything it did disclose as confidential, and Serono never said after the fact that it had done so or that it expected Dr. Sluss to keep anything confidential. Serono has no engagement agreement, no confidentiality agreement, and no "non-compete" agreement from Dr. Sluss. (Dr. Sluss Decl. ¶ 10, 19.) Dr. Sluss never even charged for his time in speaking with Serono. (Dr. Sluss Decl. ¶ 15.) Under

the circumstances, it is hard to understand Serono's assertion that it had an objectively
reasonable belief that it had a confidential relationship with Dr. Sluss.

In *Malden Mills*, this Court denied a motion to disqualify under similar facts where
counsel did nothing to ensure that the expert understood counsel's expectation of confidentiality
or counsel's understanding that the expert was retained. The plaintiff hired an expert who, in
turn, hired Dr. Ebadat and his business to do some tests.   Subsequently, one defendant retained
Dr. Ebadat  as an expert. As in the instant case, the plaintiff asserted that it had engaged the
attacked expert, but the plaintiff presented no engagement letter, no confidentiality agreement,
and nothing on which a confidential relationship could be supported or documented. As here,
the attacked expert testified that he never had been retained. *Malden Mills,* 275 B.R. 672-673.
Under these facts, this Court found that it was not objectively reasonable for the party seeking
disqualification to believe a confidential relationship existed with the attacked expert.  This
Court explained:

> The thrust of the Plaintiffs' argument is that Dr. Ebadat and/or [his
> business] is or was their expert and cannot now switch sides.
> There is no evidence to support a reasonable belief that a
> confidential relationship existed between the Plaintiffs and Dr.
> Ebadat or [his business]. . . . The Defendants have offered
> evidence by way of affidavit testimony that Dr. Ebadat did not
> believe that he or [his business] had been retained as experts. . ..
> The Plaintiffs ask the Court to infer the existence of a confidential
> relationship between Dr. Ebadat and themselves but they took no
> step to ensure Dr. Ebadat and [his business] understood the
> existence of any relationship with the Plaintiffs. Neither the
> Plaintiffs nor their lawyers hired Dr. Ebadat . . . .. Dr. Ebadat was
> not asked to sign a confidentiality agreed. There is no writing
> from the Plaintiffs, their lawyers or their consultant regarding
> confidentiality. *Id.* at 674.

Here Serono met with Dr. Sluss one time, cannot show specifically the information it
disclosed to Dr. Sluss, cannot link that information to this case, did not seek (much less get)  a
confidentiality agreement from  Dr. Sluss, did not request Dr. Sluss to perform any services, and

did not formally retain Dr. Sluss.  Under such facts, sister courts also decline to disqualify experts. *Popular, Inc. v. Popular Staffing Servs., Corp.,* 239 F.Supp.2d 150, 152-53 (D.P.R. 2003) ("expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services"); *Mayer v. Dell,* 139 F.R.D. 1, 3 (D.D.C. 1991) (single meeting a mere consultation and not a basis for reasonable belief that a confidential relationship existed); *Mays v. Reassure Am. Life Ins. Co.,* 293 F.Supp.2d 954, 956-57 (E.D. Ark. 2001) (finding not objectively reasonable to conclude a confidential relationship existed between CPA firm and party after discussion of firm's retention generally, and no discussion of case-specific facts, in a single meeting; noting Federal Rules permit a party to retain an expert consulted by an opponent; adding "Absent compelling equitable reasons to the contrary, any substantial ambiguity regarding whether there is a confidential relationship between an attorney and an expert should be resolved against the attorney seeking to invoke the relationship"); *Proctor & Gamble Co. v. Haugen,* 184 F.R.D. 410, 411-14 (D. Utah 1999) (declining to disqualify expert interviewed by movant, expert charging a fee, but no agreement placing any confidentiality restrictions, and expert did no work for movant, noting "[a] party is not prohibited from calling an expert who may have consulted with the other side.")

When a party has little evidence that it disclosed confidential information to an expert, it runs the risk that this fact alone will preclude an objectively reasonable belief that a confidential relationship exists. In a case relied upon by Serono (Br., p. 5), *Paul v. Rawling Sporting goods Co.,* 123 F.R.D. 271, 281-82 (S.D. Ohio 1988), the court refused to strike an expert under facts strikingly similar to the present case, because, given the paucity of confidential communications that passed between counsel and the expert, there could be no reasonable expectation that the expert had been retained.

The facts in *Paul* stalk Serono. The case was a products liability action for injuries suffered by plaintiff Paul while wearing a baseball batting helmet. National coordinating counsel for the defendant spoke with Dr. Goldsmith about his possible retention as an expert. After Dr. Goldsmith expressed "great interest," they met once for 1-1/4 hours. They discussed the testing of batting helmets, and the possible terms of expert retention, but Dr. Goldsmith was shown no documents related to the suit brought by Paul against Rawlings. After the meeting and several follow up contact discussing the same subjects, counsel thought the doctor was Rawlings' expert. Dr. Goldstein, in the meantime, was contacted by counsel for plaintiff Paul. Dr. Goldstein disclosed his conversations with defense counsel and was engaged by counsel for Paul. Dr. Goldstein even billed Rawlings' lawyer for his earlier meeting before he agreed to work for Paul. *Paul*, 123 F.R.D. at 273-76. No engagement letter was produced, and no documentation of any confidentiality agreement was produced. The court found that, under these circumstances, "the relationship between the parties as it related specifically to Dr. Goldsmith's being an expert witness for Rawlings in the Michael Post case was <u>a very tenuous one, in large part because the parties never communicated on matters of particular substance relating to the Michael Post case.</u>" *Id.* at 279 (emphasis added).

The *Paul* court also noted that to strike experts under the circumstances of that case – and this one – could invite abuse.

> The relationship between Rawlings and Dr. Goldsmith was both attenuated and informal, involved very little in the way of specific tasks or work product, and involved very little in the way of privileged or confidential communications. . . . While not attributing to Rawlings any intent to retain Dr. Goldsmith primarily for the purpose of making him unavailable to the plaintiffs, as opposed to utilizing his services in an affirmative fashion in the defense of this lawsuit, I also recognize that if experts are too easily the subject of motions to disqualify, unscrupulous attorneys or clients will be encouraged to engage in a race for expert

witnesses, and to identify potentially harmful experts and to create some type of inexpensive relationship with those experts, simply in order to keep them away from the other side." *Id.* at 281-82.

Ferring has no evidence that Serono was playing such games here. But Ferring has strong evidence that Serono had no objectively reasonable basis for believing it had a confidential relationship with Dr. Sluss. It is uncontested that, after learning Dr. Sluss had been approached by Serono, and after allegedly getting his agreement not to be engaged by Ferring, Serono did nothing for months until Ferring named Dr. Sluss as an expert. Such inaction would only make sense if there was no reason to act. And there was none.

## CONCLUSION

For the reasons stated, Ferring respectfully requests that Serono's motion to strike Dr. Sluss be denied.

Dated: May 17, 2004

Respectfully submitted,

Michael T. Gass (BBO # 546854)
Erin D.E. Joffre (BBO # 651665)
**Palmer & Dodge, LLP**
111 Huntington Avenue
Boston, MA 02199
Phone: 617-239-0100

*Of Counsel:*
Ronald Wawrzyn
Brian Akers
**Foley & Lardner LLP**
777 East Wisconsin Avenue, Suite 3800
Milwaukee WI 53202-5306
Phone: 414-271-2400

Stephen A. Bent
**Foley & Lardner LLP**
Washington Harbour
3000 K Street, N.W. Suite 500
Washington, DC 2007-5143
Phone 202-672-5300

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 5/17/04 including the Declaration of Patrick Sluss in Support of Ferring's Opposition.

15